## THE FRANK G. FOWLER.[1]

### (Circuit Court, S. D. New York. July 19, 1883.)

COLLISIONS—PRIORITY OF LIENS.

> Where several collisions are caused by the negligence of a tow in fulfilling a contract of towage, and each claimant for damages arrests the vessel at the same time to respond, there is no principle of the maritime law, and no interest of commerce or navigation, which requires that the elder lienor, not guilty of laches, and not having committed any waiver or abandonment, should have his claim postponed to that of the younger lienor.

In this case I find the following facts:

At all times from the fourth day of November, 1880, to the twenty-fourth day of December, 1880, both included, the steam-tug Frank G. Fowler was engaged as a tow-boat in New York harbor and Long Island sound, and the neighboring waters. At and prior to the time of the first disaster hereinafter mentioned, she was owned by Esther Pitt, of Staten island, and was run by W. D. B. Janes, of Brooklyn, as mortgagee in possession, or under a contract to purchase. Mr. Janes transacted the vessel's business at 124 Front street, in the city of New York. Subsequently, and from about November 14

1 See S. C. 8 FED. REP. 331, 340, 360.

1880, she was owned by the Neutral Transportation Company, a corporation organized under the laws of the state of New York, and having its principal office in the city of New York, of which the said W. D. B. Janes was manager. The place of transacting the tug's business continued to be at 124 Front street. On or about November 4, 1880, W. D. B. Janes, on behalf of the tug, for a stipulated price agreed to be paid, entered into a contract with Henry S. Conway and Charles M. Conway, owners of the canal-boat Lockport and of her cargo, to tow the said canal-boat and cargo from New London to New York. On the same day, in pursuance of said agreement, the tug took the canal-boat in tow at New London and started for New York. In the course of the voyage, and at about 2 o'clock on the morning of November 5, 1880, the canal-boat was cast adrift by the tug in Long Island sound, and, in consequence thereof, damages were sustained by the said Henry S. Conway and Charles M. Conway through injury to the canal-boat and cargo, and for which they, on the twenty-fourth of December, 1880, filed their libel in the district court of the United States for the southern district of New York, claiming $2,266.95. The damages arising through said injury to the canal-boat and cargo were occasioned solely by the fault and negligence of the persons in charge of and navigating the tug. On or about the twenty-third of April, 1880, the Phœnix Insurance Company issued its policy of insurance for the sum of $6,000 upon the hull cf the barge W. H. McClave, said barge being of more than that value. On or about the nineteenth of November, 1880, the Eastern Transportation Company, a corporation organized under the laws of the state of New York, and having its principal office in the city of New York, entered into a contract with the owners of the barge, for a stipulated price agreed to be paid, to tow the barge from New York to Stamford, and from Stamford to Norwalk, Connecticut, and on that day it started to tow the barge to Stamford, where, afterwards, she safely arrived, and was there left to discharge part of her cargo. On the night of November 24, 1880, the Eastern Transportation Company sent the said tug to take the barge from Stamford to Norwalk, and at a very early hour on the morning of the next day the tug, with the barge in tow, left Stamford for Norwalk. In the course of the voyage, and before daybreak on November 25th, the barge was, through the negligence and mismanagement of those in charge of the navigation of the tug, run on a ledge of rock at Shippan point, near Stamford, and there stranded. The rescue and repairs of the barge were directed and carried on by the Phenix Insurance Company, as insurer. The repairs were completed on the twenty-third of December, 1880, and were paid for by the company on that day to the amount of $5,523.91. The company also paid the sum of $750 for wreckers on or about the tenth of December, 1880. On the twenty-third of December, 1880, the Phenix Insurance Company filed its libel against the tug for the recovery of its damages. Process was thereupon on that day issued to the marshal against the tug, and on the twenty-fourth of December, 1880, the marshal seized the tug under such process, and also under process issued under the first-named libel so filed, the processes under the two libels being served at one and the same time, and the tug being attached in both suits simultaneously. The damages of the Phenix Insurance Company amounted to $6,273.91, and have been determined at that amount by the district court by a final decree. There has been an interlocutory decree in the suit on the first above-named libel, awarding to the libelants therein a recovery of their damages, with costs, and a reference to ascertain such damages, but they have not been ascertained. The canal-boat was insured in the Buffalo Insurance Company, and the first above-named suit is prosecuted, so far as the damages to the canal-boat are concerned, for the benefit of that company. On the eighth of November, 1880, Henry S. Conway, with the representative of the Buffalo Insurance Company, consulted a lawyer with reference to their claim against the tug, and were advised that their claim was a good one. On that

day Henry S. Conway informed Mr. Janes that the tug would be held responsible for the damages. The canal-boat was at that time lying sunk in Guilford creek. Between the day of the casting adrift of the canal-boat and the date of the stranding of the barge, Henry S. Conway, who was master and managing owner of the canal-boat at the time of the disaster, was necessarily occupied in taking charge of her at Guilford creek, where she lay sunk, and in raising and saving her and her cargo, after engaging wreckers in New York City. It was not possible to ascertain the extent of the damage to the canal-boat or cargo until she was put on the marine railway at New Haven, on or after December 13, 1380. From November 15, 1880, to November 25, 1880, the tug was engaged in towing between various points in New Jersey and places in the sound, in the state of Connecticut. She usually arrived at the city of New York from the eastward in the evening, laid up for the night in New Jersey, and left early in the morning, and she only touched at the city of New York to report work done. Henry S. Conway and Charles M. Conway resided in the city of New York, and were acquainted with W. D. B. Janes. The Buffalo Insurance Company had a resident agent in the city of New York. On or about the seventeenth of February, 1881, the tug being in the custody of the marshal, the claimant, the Neutral Transportation Company, made application for her appraisal and her release from custody under bonds or on deposit of money. Such appraisal was had, and the valuation of the tug was fixed at $4,500, which sum of money the owner of the tug paid into the registry of the district court, and the tug was released. At the same time her owner paid into said registry $175 on account of costs for the Phenix Insurance Company, and $175 on account of costs for Henry S. Conway and Charles M. Conway, and also certain sums for marshal's fees and expenses of appraisal, all as provided by an order of the district court.

On the foregoing facts I find the following conclusions of law:

The Conways were not guilty of any laches prejudicing their lien or claim as between them and the Phenix Insurance Company. The claim and lien of the Conways are entitled to priority of payment over the claim and lien of the Phenix Insurance Company. The Conways are entitled to a decree accordingly, with costs in this court to be taxed. Both cases must be remanded to the district court, with directions to that court to proceed with the reference in the suit brought by the Conways, and to take such further proceedings thereafter as may not be inconsistent with the findings and opinion of this court. The decree of the district court must be reversed as to the matters appealed from. SAMUEL BLATCHFORD, Circuit Justice.

*Carpenter & Mosher,* for the Conways.

*Butler, Stillman & Hubbard,* for the Phenix Insurance Company.

BLATCHFORD, Justice. The district court awarded priority of claim and lien to the Phenix Insurance Company, and directed that the $4,500 and all accumulations of interest thereon be paid to it. The Conways appeal from such award and direction. The view of the district court was that the interest or lien of the Conways in the tug, growing out of the damage suffered by the canal-boat and cargo at the earlier date, was liable to respond for the damage to the barge at the later date. I cannot concur in this view. This is a case where there was no priority of attachment or seizure of the vessel, although the libel for the second damage was first filed, and it is not a case where either claim can be considered as other than one sounding in damages for a tort. The contention on the part of the Phenix Insurance Company is that the claims arising out of the two torts are

to be paid in the inverse order of their creation, on the view that though they are claims of the same class they are not claims of the same rank of privilege. It may very well be that among creditors he is to be preferred "who has contributed most immediately to the preservation of the thing;" that "the last bottomry bond is preferred to those of older date;" and "that repairs and supplies furnished a vessel in her last voyage take precedence of those furnished in a prior voyage." But the principle governing such cases is that "the services performed at the latest hour are most efficacious in bringing the vessel and her freightage safely to their final destination;" and that "each foregoing incumbrance, therefore, is actually benefited by reason of the succeeding incumbrance." This principle can have no place except where services are rendered, such as loaning money, furnishing supplies, making repairs, salvage, and claims arising out of contract generally. Such services benefit the vessel, make her better, preserve her, contribute to save ner or improve her or keep her in running or going order for the benefit of all who have prior liens or claims on her. But a second tort or collision can have no such effect in reference to a party injured by a prior tort or collision. The second tort or collision does not benefit the vessel or add to her value or preserve her. It only tends to injure her, and the sufferer by the first tort or collision, in having recourse against the vessel after the second tort or collision, must take her as he finds her, damaged, perhaps, by a second collision. He ought not to lose the benefit of his lien arising out of the first tort or collision, unless the circumstances are such that in judgment of law he may fairly be held to have waived his lien, or postponed it, as regards the lien arising out of the second tort or collision. In the present case there was no waiver or postponement. No case cited declares any doctrine which sanctions the giving of priority in the present case to the Phenix Insurance Company, except what is found in the case of *The America,* 6 Monthly Law Rep. (N. S.) 264. That case is not sustained by authority, nor is it sustainable on principle. There was nothing in the mere fact of the second tort to extinguish the lien arising out of the first tort, and, when both torts were of the same character, each arising out of negligence towards a tow in fulfilling a contract of towage, and each claimant arrests the vessel at the same time, to respond, there is no principle of the maritime law, and no interest of commerce or navigation, which requires that the elder lienor, not guilty of laches, and not having committed any waiver or abandonment, should have his claim postponed to that of the younger lienor.

The decree of the district court must be reversed, as to the matters appealed from, with costs of the appeal, and priority of lien and of payment out of the fund be awarded to the Conways, and both cases be remanded to the district court, with directions to that court to proceed with the reference in the suit brought by the Conways, and to take such further proceedings thereafter as may not be inconsistent with the findings and opinion of this court.