THE JOHN G. STEVENS.[1] THE R. S. CARTER. LOUD *et al. v.* THE JOHN G. STEVENS and THE R. S. CARTER.

*(Circuit Court, E. D. New York. October 31, 1889.)*

MARITIME LIENS—PRIORITY—REPAIRS—SUBSEQUENT TORT.
The maritime lien created by collision takes precedence of liens for repairs and supplies, although the latter liens arose prior to the collision.

In Admiralty. Appeal from district court. See 38 Fed. Rep. 515.
*George A. Black,* for libelants.
*Alexander & Ash* and *Robert D. Benedict,* for intervenors.

BLATCHFORD, Justice. This is an appeal by certain intervenors in this suit from a decree made by the district court on the 26th of April, 1889. The libel was filed by Loud and others, as owners of the schooner C. R. Flint, and carriers of her cargo, and the master of that schooner, against the two tug-boats, to recover for damages caused to the schooner and her cargo, and those suffered by her master, on the 8th of March, 1886, by a collision between the bark Doris Eckhoff, which was at the time in tow of the Carter, and the schooner Flint, which was at the time in tow of the Stevens.

The Carter was seized under process, and a decree was obtained against her by default, for $15,155.15, as damages sustained by the Flint and her cargo, and by her master, for the loss of personal effects, that amount including interest to December 26, 1888. The Carter was sold under process issued in another suit against her, and the proceeds of the sale were brought into the registry of the district court. The firms of Jones & Whitwill, Gladwish, Moquin & Co., and Theodore Smith & Bro. filed libels in the district court against the Carter to recover, two of them for repairs made upon her, and the other one for coal furnished to her. The claim of Jones & Whitwill was established at the sum of $962.70, on the 16th of January, 1889, for repairs done to the Carter at Jersey City, between August 1, 1885, and January 17, 1886, she being then owned in the state of New York. The claim of Gladwish, Moquin & Co. was established at the sum of $249.40, on the 16th of January, 1889, for coal furnished to the Carter at Brooklyn, between November 1, 1885,

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

and March 7, 1886, under such circumstances as to give a lien upon her, under the laws of the state of New York. The claim of Theodore Smith & Bro. was established at the sum of $187.72, on the 16th of January, 1889, for repairs made to the Carter in New Jersey, between August 1, 1885, and August 22, 1885, while she was owned in the state of New York. The proceeds of sale being insufficient to pay the claims for damages growing out of the collision, and the claims for the repairs and the coal, the district court was called upon to determine the priorities between the respective parties. It held that the lien of the libelants in this suit for the damages sustained by the collision was entitled to priority over the claims of the three intervening parties for repairs and coal, although the latter liens arose prior to the collision; and it decreed that the whole of the proceeds of sale in the registry be paid to the libelants on account of their damages by the collision, such damages exceeding the amount in the registry. That amount is also less than the amount of the claims for repairs and coal.

The opinion of Judge BENEDICT in this case, in the district court, was delivered in April, 1889, and is reported as *The R. S. Carter*, 38 Fed. Rep. 515. Judge BENEDICT says:

"The question is not between a wages claim and a collision claim, nor between material-men and a claim arising out of a *quasi* tort, where the cause of action is a neglect of some duty assumed in pursuance of a voluntary agreement between the parties. The claim of Loud is for damages caused by collision,—a tort, pure and simple, committed by the R. S. Carter. The claims of the material-men are for repairs done to the R. S. Carter prior to the collision, which liens have not been lost or impaired by laches. The question is analogous to the question decided by this court in the case of *The Pride of the Ocean*, 3 Fed. Rep. 162."

In that case, decided in June, 1880, Judge BENEDICT held that a claim for damages caused by a collision was entitled to preference over a bottomry loan made upon the vessel for the same voyage, prior to the happening of such collision.

Judge BENEDICT, in *The Pride of the Ocean*, cited in support of his decision the case of *The Aline*, 1 W. Rob. 111, decided by Dr. LUSHINGTON in December, 1839, where it was held that, in a case of damage by collision, the lien for the damage was, in the event of a deficiency of proceeds, paramount to the claim of a mortgagee or bondholder accruing prior to the collision. Dr. LUSHINGTON was of opinion that the mortgagee and the bottomry bondholder could not take any right greater than the owner of the vessel could confer, namely, a lien on her as security against the owner and all who claimed under him. He said that, if the vessel was not first liable for the damage by the collision, the person injured might be wholly without a remedy, and added:

"Another reason that would incline the preponderance in favor of the person suffering the damage arises from the consideration that he has no option, no caution to exercise; the creditor on mortgage or bottomry has. He may consider all the possible risks, and advance his money or not, as he may think most advisable for his own interest. He has an alternative; the suitor in a cause of damage has none."

In *The Pride of the Ocean*, Judge BENEDICT remarked that it was not possible to say that the prior lender on bottomry had derived any benefit from a subsequent collision, and that "the value of the lender's security cannot be enhanced by a subsequent collision, nor could such a collision in any way tend to preserve the lender's security for him, but the contrary;" and he stated that he rested his decision on the ground "that a lender of money upon bottomry is a voluntary creditor, who, for the advantage to be derived therefrom, and with knowledge of the risks attending the voyage, deliberately enters into a contract with the ship, and, moreover, is permitted to obtain compensation for the risk assumed by exacting a maritime premium, while the relation to the ship of him whose demand arises out of a collision is involuntary. It is created by circumstances over which the creditor in damage has no control, and he can receive no compensation for the risk."

In his opinion in the case at bar Judge BENEDICT says that the question involved is not the same as that decided by him in the case of *The Samuel J. Christian*, 16 Fed. Rep. 796, in April, 1883; that in that case the controversy was between two claims arising *ex contractu*, (a breach of a contract to tow being the sole foundation of the libel,) on the view that the libelant waived any tort, and relied upon a breach of the contract, the damage being claimed for the act of the tug in dragging the tow against a pier; and he states that the decision was, not only that wages, but the claim of a material-man for prior necessary repairs to the vessel, were entitled to priority in payment over a demand based upon a subsequent contract which had no relation to any necessity of the ship, and in no way tended to increase her value, and which had been voluntarily entered into by the creditor.

In his opinion in the case at bar Judge BENEDICT also refers to the fact that the precise question involved had been decided in one way by Judge NIXON, in the district court for the district of New Jersey, in the case of *The M. Vandercook*, 24 Fed. Rep. 472; and in the opposite way by Judge BROWN, in the district court for the southern district of New York, in the case of *The Amos D. Carver*, 35 Fed. Rep. 665. This difference of opinion between the judges of two of the district courts in this circuit, on the same question, makes it important for this court to establish a rule which shall be one of uniformity in the district courts in this circuit upon that question.

In the case of *The M. Vandercook*, in June, 1885, a libel against a tug which was towing the libelant's boat under a contract of towage alleged negligence in the tug which caused damage to the tow by her striking a pier. Judge NIXON held that the damages arose *ex delicto*; that the libel was not for damages sustained by reason of a breach of the towage contract: and that it was the settled doctrine of the American, as well as of the English, admiralty, that the claim *ex delicto* should be paid in preference to a claim for prior repairs and supplies.

In the case of *The Amos D. Carver*, in June, 1888, Judge BROWN held that a lien on a vessel for seamen's wages, and a lien for necessary repairs and supplies, outranked a subsequent lien arising from a negligent col-

lision. Judge BROWN was of opinion that a prior contract lien could not be superseded through a subsequent tort of the vessel, to which the prior lienor was in no way privy, and which afforded him no benefit; and that, the prior lienor not being a party to the navigation of the vessel, and in no way responsible for the tort, his priority of right should be upheld. ' Judge BROWN states his views as follows:

"The liens created or recognized by the law upon the contracts of the ship with seamen, freighters, supply-men, or lenders on bottomry, are designed for the security of the parties concerned, and are deemed necessary for the conveniences of commerce, and in the exigencies of navigation. Such claims, moreover, are mostly incapable of being conveniently secured in any other way than by a lien on the ship, and are therefore, as a rule, equitably entitled to a superior privilege. Damage liens, on the other hand, whether for injuries to cargo or to vessels, by collision, by stranding, or by other negligent navigation, belong to the perils of the seas, and are, for the most part, otherwise secured by the universal practice of marine insurance. If this security is neglected, it is by the choice or fault of the owner. The same need of security upon the ship, as respects such perils, does not exist; and hence they have everywhere been ranked by the maritime law below contract liens for wages, bottomry, and supplies. The controversy in the great majority of cases is practically with the insurer, (as it is mainly in this case,) who, having in the first instance paid the loss, in effect, out of the fund created by the premiums advanced by all ships insured, seeks to recover indemnity from the offending ship. The insurer does, indeed, have the benefit of the injured party's lien. But to subordinate prior lienors for wages, bottomry, and supplies to the collision lien, would be practically, and in effect, to treat those lienors as co-proprietors *pro tanto* in the offending ship, and responsible for its navigation; or as reinsurers *pro tanto* of the underwriters upon the vessel and cargo injured,—a relation as far as possible removed from the equitable relation of the parties. If the lienors may insure, so may the owners of the injured ship and cargo, as they usually do. They stand equal in this respect, and the superior equitable right of the prior contract lienors stands unaffected."

Referring to the cases thus decided by Judge NIXON and Judge BROWN, Judge BENEDICT, in his opinion in the case at bar, says:

"In this conflict of opinion, I incline to follow the analogy of the case of *The Pride of the Ocean*, above alluded to, and give the subsequent collision claim priority over the prior claims of the material-men. As between such creditors, when one or the other must lose his debt, it seems to me more equitable that the loss should fall upon the material-man, who voluntarily, and for a consideration, agreed with the ship-owner to give delay in payment, in order that the ship-owner, by the use of his vessel, might earn profits wherewith to pay the material-man. The material-man, for a consideration in the price he charged, voluntarily assumed the risk of a total loss of his security by the sinking of the ship he repaired in a collision. Why, in fairness, should not the creation of a lien upon the ship he repaired, arising from a collision, be held to be included in his risk? Why may not a material-man, who gives time, be fairly held to become a party to the employment of the vessel in the course of which the accident occurred, since he has a beneficial interest in that employment? I find nothing inconsistent with such a view in the case of *The Frank G. Fowler*, 17 Fed. Rep. 653. No doubt the maritime law gives a lien in order that the ship may gain time, but the policy of the law is to make the time of credit as short as possible; and it seems to me that a rule which, in effect, tends to extend the duration of liens of material-men, and

to increase the amount of liens upon the ship, because, under the rule, they serve to lighten, and sometimes, as in the present case, destroy, all liability for collision, is a rule of doubtful expediency, and may be rejected as contrary to public policy. Upon these grounds, following the analogy of my decision in the case of *The Pride of the Ocean*, I have determined to direct that the claim of Loud be paid out of the proceeds in court, prior to the demands of the material-men."

The case of *The Frank G. Fowler*, 21 Blatchf. 410, 17 Fed. Rep. 653, decided by me in July, 1883, in the circuit court for the southern district of New York, does not cover the question here involved. In that case there were two collisions, at intervals of time, caused by the negligence of the same tug in the course of the execution of contracts of towage. Each claimant for damages arrested the tug at the same time, and, there being no laches, or waiver or abandonment, the court held that the elder lienor was entitled to priority in payment over the younger lienor. The view of the court was that each claim was to be considered as one sounding in damages for a tort; that the second tort or collision could have no effect in reference to a party injured by the prior tort or collision, to benefit the vessel or add to her value or preserve her; that there was nothing in the mere fact of the second tort to extinguish the lien arising out of the first tort; and that, when both torts were of the same character, each arising out of negligence on the part of the tug in fulfilling a contract of towage, and each claimant arrested the vessel at the same time to respond, there was no principle of the maritime law, and no interest of commerce or navigation, which required that the elder lienor, not guilty of laches, and not having committed any waiver or abandonment, should have his claim postponed to that of the younger lienor.

The rule in England is thus laid down in Abb. Shipp. (11th Ed.) 621:

"The maritime lien of damage, originating in the wrong of the master and crew of the vessel in fault, and founded on considerations of public policy for the prevention of careless navigation, takes precedence, within the limits which the law assigns to the indemnification of the injured party, even though anterior in date, of liens *ex contractu*. It absorbs, in the event of the *res* proving insufficient to meet all demands, the liens of wages, towage, pilotage, and bottomry, leaving them to be enforced by proceedings against the persons of the owners. Were it otherwise, the owners to whom the damage is imputed would be indemnified at the expense of the injured party; the wrong-doer at the cost of him to whom the wrong has been done."

As authority, the author cites *The Benares*, 7 Supp. Notes Cas. Adm. & Ecc. 50, 54, decided by Dr. LUSHINGTON in May, 1850, and *The Linda Flor*, Swab. 309, decided by the same judge in December, 1857, and reported also in 6 Wkly. Rep. 197. In *The Elin*, L. R. 8 Prob. Div. 39, decided by Sir ROBERT PHILLIMORE, in August, 1882, he held that the maritime lien arising out of damage done by a foreign vessel, in a collision for which she is to blame, takes precedence of the maritime lien of the seamen on board such vessel at the time of collision for wages earned by them subsequently to the collision; and stated that it was admitted that the claim for damage took precedence over the claim of the

crew as regarded wages earned before the collision. He cited with approval the case of *The Chimera*, decided by himself in November, 1852, (Shipping and Mercantile Gazette of November 27, 1852;) *The Linda Flor*; and the case of *The Duna*, decided in the Irish Admiralty Court, in October, 1861, (1 Mar. Law Cas. 159, and 5 Law T. N. S. 217.) In the court of appeal, in May, 1883, in *The Elin*, L. R. 8 Prob. Div. 129, before BRETT, Master of the Rolls, and Lords Justices COTTON and BOWEN, the decision of Sir ROBERT PHILLIMORE in the same case was affirmed. That court approved the decisions in *The Benares*, *The Chimera*, *The Linda Flor*, and *The Duna*. BRETT, M. R., stated that it would be unjust to the owner of the injured ship to allow the fund against which the lien for damage had priority to be diminished by a payment of wages. COTTON, L. J., said that it was a just principle that the owner who had caused the damage should not be at liberty to withdraw any part of the fund arising from the value of his ship and freight out of the reach of the claimant for damages.

In Macl. Shipp. (2d Ed.) 653, it is said that liens in damage causes "rank against ship and freight, in derogation of any rights of ownership or rights by mortgage or beneficial lien existing at the time of the collision;" and that "they acquire thereby priority over mortgages, prior bottomry, wages, pilotage, towage, and salvage;" referring to *The Benares*, (above cited.)

In *Norwich Co.* v. *Wright*, 13 Wall. 104, 122, the supreme court, speaking by Mr. Justice BRADLEY, said: "Liens for reparation for wrong done are superior to any prior liens for money borrowed, wages, pilotage, etc."

The reasons assigned by Judge BENEDICT in the present case, for coming to the conclusion at which he arrived, seem to me to be more sound than the opposite views, and a decree must be entered to the same effect as that made by the district court, awarding priority to the libelants in respect of their claim for damages.