## THE GLEN ISLAND.

(District Court, S. D. New York. February 2, 1912.)

MARITIME LIENS (§ 37*)—PRIORITY—LIENS FOR TORTS AND FOR REPAIRS AND SUPPLIES.

Maritime liens for repairs and supplies furnished to a vessel subsequent to the attachment of a lien for a tort, as for collision or negligent towage, are entitled to preference over such lien, and those for supplies or repairs furnished after the expiration of the voyage on which the tort was committed, which in case of a harbor vessel may be equitably estimated and fixed as continuing for 40 days, take precedence over those arising during such voyage, or estimated time, while those in each class are entitled to share pro rata.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 58–70; Dec. Dig. § 37.*

Maritime liens for torts, see note to The Anaces, 34 C. C. A. 565.]

In Admiralty. Suit by the Chelsea Iron Works against the steam tug Glen Island, with 11 other actions against the same tug. On determination of priority of liens.

Each of the libels above mentioned asserts a lien against the tug, which has been sold under decree obtained in the first cause. All the libels were filed before sale. One is for seaman's wages, and is admittedly entitled to preference. One libel (that of Pendleton) claims damages for negligent towage occurring on July 26, 1910. All the other libels are either for repairs or supplies, and it is admitted that most of the repairs were executed and supplies furnished subsequent to the date of the alleged negligent towage. The fund produced by sale and in court is sufficient to pay all claims for wages, supplies, and repairs, but is not sufficient also to discharge the alleged towage damage. Libelants who proved their claims before the Commissioner and obtained final decree moved for payment, asserting that, even if Pendleton's claim be good, and good for the entire amount demanded, it must as matter of law be postponed to repair and supply claims accruing after the alleged negligent towage.

Mr. Martin, for Pendleton.

Messrs. Zabriskie, Matteson, Alexander, French, Baird, Cleary, Potter, Beecher, and Phlippeau, for sundry libelants for repairs and supplies.

HOUGH, District Judge (after stating the facts as above). Until The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

several points of law more or less applicable to the facts herein were thought well supported by authority in this circuit. Thus: (1) A lien for pure tort, e. g., collision, ranked all antecedent liens ex contractu ('The R. S. Carter [C. C.] 40 Fed. 331, Blatchford, J.), except· (2) seaman's wages (citations in Stevens Case, supra, 170 U. S. 119, 18 Sup. Ct. 544, 42 L. Ed. 969). But (3) a lien for negligent towage did not rest wholly or principally on tort, but arose quasi ex contractu from the negligent performance of contract, wherefore it was inferior to wholly contractual and beneficial liens earlier in date ('The J. G. Stevens in trial court [D. C.] 58 Fed. 792, Benedict, J.), even arising on the same voyage, which (4) in the case of harbor vessels might be equitably estimated and fixed at 40 days ('The Gratitude [D. C.] 42 Fed. 299, Brown, J.). Finally (5) these rules had no application as between two nearly cotemporaneous torts. The Frank G. Fowler (C. C.) 17 Fed. 653, Blatchford, J.

The answer of the Supreme Court to the question certified in 170 U. S. 113, 119, 18 Sup. Ct. 544, 42 L. Ed. 969, changed these rulings in one respect only, viz., it reversed the third; it being held that negligent towage gave rise to a lien as completely founded on tort as that for negligent collision. Rule 1 was positively affirmed, and the exception in favor of seamen impliedly approved. The other local rulings above stated were not disturbed, enlarged, or approved.

It thus appears that the leading case of The Stevens does not touch the question here, viz., whether liens for repairs and supplies accruing subsequent to a lien for pure tort rank with, above, or below such tort lien. This question will be considered without any reference to the accusations of laches contained in some of the papers submitted. Libelants are nearly equal in sloth.

It was said in The Stevens, supra, that two English decisions ('The Aline, 1 W. Robinson, 111, and The Bold Buccleugh, 7 Moo. P. C. 267) held that the liens for repairs made after collision, in so far as they increase the value of the vessel, may be preferred to a lien for damages by the collision. 170 U. S. 120, 18 Sup. Ct. 544, 42 L. Ed. 969. This apparently means that the two cases cited held the same thing. The facts in The Aline are fairly summarized by Brown, J., in The Young America (D. C.) 30 Fed. at 789; but in The Bold Buccleugh, Sir John Jervis declared those facts to be that:

"There was a bottomry bond before and after the collision, and the court held that the claim for damage in a proceeding in rem must be preferred to the first bondholder, but was not entitled against the second bondholder to the increased value of the vessel by reason of repairs effected at his cost."

This is a singular misunderstanding of the evidence before Dr. Lushington, and on this misstatement Jervis, J., makes the following declaration of law:

"The interest of the first bondholder took effect from the period when his lien attached. He was, so to speak, a part owner in interest at the date of the collision, and the ship in which he and others were interested was liable to its value at that date for the injury done without reference to his claim. So by the collision the interest of the (collision) claimant attached, and dating from that event the ship in which he was interested having been repaired was put in bottomry by the master acting for all parties, and he would be

bound by that transaction. This rule, which is simple and intelligible, is in our opinion applicable to all cases."

This is not the reasoning of The Aline; but I think it is true that, if the facts of that case had been as Sir John Jervis thought they were, Dr. Lushington would have held what the Privy Council declared to be the law.

There are at least two plainly recognizable lines of thought by which the usual admiralty rule of paying liens of the same class in the inverse order of their accrual is justified. One is the idea advanced in The Buccleugh, namely, that each person who acquires a jus in re becomes a sort of coproprietor in the res, and therefore subjects his claim to the next similar lien which attaches. This is a highly artificial style of reasoning, though interesting as furnishing internal evidence of the civilian origin of admiralty. The simpler, and therefore it is thought the better, reasoning is briefly adverted to by Blatchford, J., in The Fowler, supra; 17 Fed. at page 656. It is that the last beneficial service is the one that continues the activity of the ship as long as possible and therefore is to be preferred, supposing always that that which is produced or contributed to by the service is a *voyage*.

It makes no difference which theory be accepted, the logical result is that, since repairs and supplies are what enable the vessel to continue about her business after she has wronged another vessel, liens for those repairs and supplies are to be preferred to the lien for the wrong—a wrong committed by a res as yet unrepaired and unbenefited by the necessaries subsequently supplied. This is surely true after the party injured has had reasonable opportunity to enforce his tort lien by appropriate seizure, and thereby cut off the possibility of future liens, however beneficial to the res so seized. The Young America (D. C.) 30 Fed. 790.

It follows, therefore, that all the liens here in question and arising after the expiration of what may be called the voyage on which the Glen Island was engaged on July 26, 1910, are entitled to a preference over all claims of any kind arising on such voyage.

It remains to inquire whether any reason exists for disturbing the rule of The Gratitude, supra. This is mentioned because it was said at bar that not much has been heard of that rule in recent years, and its abandonment was suggested. No reason for such change is seen; it is just as true now as when The Gratitude was decided that in the interest of lienors generally some limit must be set measuring out periods of time within which claims of the same rank shall share pro rata, and the measure fixed by Brown, J., has in my judgment been justified by experience.

Since, therefore, the claim of the Pendleton libel for negligent towage is (under the authority of The Stevens, supra) superior to all antecedent repair and supply claims, the final inquiry is whether it has any preference over or ranks in equality with supplies furnished and repairs executed within 40 days from July 26, 1910.

That repairs and supplies procured upon the same voyage on which a collision happens, and after such collision, are superior in kind and preferred in rank to earlier damage claims, was in my opinion settled

law for centuries before Brown, J., so declared it in The Gratitude, 42 Fed. 300.

So far as repairs are concerned, The Aline, supra, is flat authority. The application of that case is not so plain where the earlier tort is of such a nature that it does not injure the offending ship; yet it is plain enough that repairs executed after a tort make the ship a different and better ship than she was when the wrong was done, and to such a situation whether the offending vessel be injured or not, the reasoning of Dr. Lushington applies, viz., that the tort claimant shall not absorb for his lien that which did not exist when the lien accrued. By hypothesis every repair upon a vessel puts into her the value of the repair; therefore shall the value of repairs be taken out before the tort claimant is permitted to proceed.

With supplies the case is only apparently different. The lien in every case attaches not only to the vessel, but "her tackle, apparel, and furniture," and these words are wide enough to include necessary supplies without which the ship is not fully furnished. Moreover, repairs and necessary supplies have long stood upon the same basis, and liens for both are equally justified by the reasoning referred to in The Frank Fowler.

It follows that, without calling in the aid of the doctrine of laches, the claim of the Pendleton is (1) subordinate to all claims of every kind herein mentioned accruing subsequent to a date forty days after July 26, 1910. This conclusion is based on the doctrine of voyages; and (2) it is also subordinate to all repair and supply claims arising within 40 days after July 26, 1910, because of the inherently inferior nature of prior tort demands depending upon collision or negligent towage, which wrongs are for legal purposes exactly alike. The standing of a tort lien owned by one injured in benefiting the vessel is not here considered.

The proceedings before the Commissioner may be regulated by this opinion, and orders of distribution will be signed in accordance herewith.

It may be that the proctors for claims earlier in date than July 26, 1910, will desire to contest the Pendleton libel, in which case the stipulation offered to me, and now directed to be filed regarding reservations for costs, may be enforced.