## THE TOWANDA.

· (District Court, E. D. New York.  May 22, 1914.)

**1. SEAMEN (§ 27*)—LIEN FOR WAGES—HARBOR TUGS.**

The rule that maritime liens entitled to precedence in case of harbor tugs, making no regular voyages, will be limited to such as arose within 40 days does not apply to claims for wages which may be given priority for a reasonable time.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 141, 157–169; Dec. Dig. § 27.*]

**2. SEAMEN (§ 27*)—LIEN FOR WAGES.**

Act June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), providing for maritime liens for repairs, supplies, etc., makes no provision for claims for wages which are entitled to preference as before its enactment.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 4, 141, 157–169; Dec. Dig. § 27.*]

In Admiralty. Suit by Otto Anderson and others, with Thomas Brickley impleaded, against the steam lighter Towanda. On motion for preference on behalf of a seaman's claim for wages. Motion granted.

Robinson & Robinson, of New York City (George L. Robinson, of New York City, of counsel), for Brickley.

Alexander & Ash, of New York City (Mark Ash, of New York City, of counsel), for Burns Bros.

CHATFIELD, District Judge. [1] The Towanda was sold under decree for repairs upon January 29, 1914. This final decree embraced claims for wages which had accrued within 40 days prior thereto. A few days after the entry of the decree of sale, another libel for wages was filed, by a seaman, for services rendered between September 1 and 23, 1913. The proceeds are insufficient to pay all of the claims, and the proctor for the seaman filing the last libel has made a motion for a preference in the payment of his decree. This is opposed by the materialmen, who claim that the priority of a lien for seaman's wages expires in the case of harbor vessels at the end of 40 days, under the decision of Judge Brown in the case of The Gratitude (D. C.) 42 Fed. 299.

A full statement of the rule with relation to the preference given to liens for seaman's wages and the reasons therefor, as well as a dis-

cussion of the exceptions thereto, will be found in the case of The Glen Island (D. C.) 194 Fed. 744.

In The Gratitude, supra, Judge Brown fixed a limit of 40 days within which a lien for supplies must be prosecuted, for the reason that neither the period of a voyage nor the period of a season was properly applicable to the case of vessels operating in or around the harbor, and where the people dealing with them could be reached by them within 24 hours, as these people were amenable to process at any time. But in the case of The Gratitude, however, the actual order of payment was decided as follows:

"In the above cases there will be paid (1) seamen's wages; next (2) supply liens arising within 40 days before August 28, 1889, on which day the towage lien for damage accrued; next (3) the lien for damage in towing; next (4) the residue to be divided pro rata among the remaining claims for supplies."

The wages claims seem to have been preferred in spite of the 40-day rule.

In the case of The Glen Island, supra, Judge Hough says that liens for pure torts (that is, collision) outrank all antecedent liens ex contractu, except seamen's wages, citing The John G. Stevens, 170 U. S. 119, 18 Sup. Ct. 544, 42 L. Ed. 969. He decides that the claim of Pendleton, which was for materials, was: (1) Subordinate to all claims of every kind therein under decision, accruing subsequent to a date 40 days after July 26, 1910 (this conclusion is based on the doctrine of voyages); and (2) it is also subordinate to all repair and supply claims arising within 40 days after July 26, 1910, because of the inherently inferior nature of prior tort demands, etc.

In this district, in the case of The Samuel Morris (D. C.) 63 Fed. 736, Judge Benedict held that the claims of Greason and of Palmer, accruing within 40 days of the time of the libel, should be paid before the other claims in the action, arising before the beginning of that period. Judge Benedict held that the rule laid down in the case of The Gratitude seemed to be a very proper rule to apply to that case, but made no decision at all as to the payment of wages, inasmuch as the claims considered by him were none of them wages claims.

In the case of The Glen Iris (D. C.) 78 Fed. 511, Judge Benedict again says that:

"Questions have arisen as to the distribution of the proceeds of the tug, a domestic vessel, sold under a decree of the court. Claims for wages, as to which none of these questions can arise, have been already paid."

In this case he followed the rule of The Gratitude, but made no decision with respect to wages claims, other than the general exception quoted above.

In the early case of The Live Oak (D. C.) 30 Fed. 78, seamen's wages for an entire season were sustained ahead of mortgage claimants against the vessel, but the boat in that case was a schooner, and it throws no light upon the 40-day rule.

In the case of The Nebraska, 69 Fed. 1009, page 1014, 17 C. C. A. 94, 99, we have the only Circuit Court of Appeals decision with respect to the question of liens affected by the 40-day rule. The court there said:

"With respect to vessels navigating the high seas, from an early time the limit has been by the voyage. Blaine v. The Charles Carter, 4 Cranch, 332 [2 L. Ed. 636]. And liens for wages, supplies, and bottomry arising upon a subsequent voyage are given ·priority to those arising upon a previous voyage," etc.

The court then goes on to say that upon the Great Lakes the time has been limited by seasons and not by voyages, and "in the open harbor, where there is no close of the season of navigation, a limit of 40 days has been determined.". A number of cases are cited, but these have to do with liens for supplies, and the general reference to the 40-day rule, as having the same scope as the classification of the preceding sentence (which included liens for seamen's wages), is apparently the result of an oversight.

In the case of The Samuel Little, decided in this district upon the 26th day of February, 1914, a claim for seamen's wages upon a harbor tug was allowed and ordered paid in advance of claims of materialmen, with the following memorandum:

"In the absence of authority I am not disposed to apply the 40-day harbor rule to these wage claims. Motion granted. Van Vechten Veeder, U. S. J."

[2] Prior to 1910, the laws of New York (Consol. Laws, c. 33, art. 4; chapter 38, Laws of 1909) provided that a debt not a lien by the maritime law, amounting to more than $50 in the case of seagoing vessels, or $15 in the case of any other vessel, should be a lien and preferred to all other liens thereon except mariner's wages.

By the Act of Congress of June 23, 1910, 36 Stat. 604, a maritime lien is given for repairs, supplies, and other necessaries, to a foreign or domestic vessel. The United States statute supersedes all state statutes with relation to the same subject, but no provision is made with respect to seamen's wages, and the state law is therefore left in the same condition as before the enactment of the statute.

It must be held that seamen's wages are entitled to a preference as before the enactment of these statutes. In the case of the New York law, a period of 90 days to file a lien is given. Under the United States statute just cited, no period is stated within which the lien must be prosecuted, and hence a reasonable time would seem to be the only limit which can be imposed; that is, laches in bringing a claim should be held to be a defense.

It appears from the record that the libelant in the present matter was absent upon another voyage, and that this prevented him from bringing his action sooner. No distinct method of estimating voyages, in the case of boats around the harbor, or making a trip away from the harbor and coming back, but still employing their men either as day laborers or from month to month, with power of discharge at any time, and where the men have their homes in New York City and are in constant or frequent communication with the city, would seem to be capable of general definition, unless we fall back upon the nature and terms of each particular employment or case. If a boat is chartered for trips or voyages of sufficient duration to be properly classified as such, there would seem to be no reason why a seaman upon such a craft should not be protected as in the case of those who

have gone to sea. If a boat is working by seasons, or is put in and out of commission, or the services of the crew are interrupted by being placed upon the dry dock, or from other causes terminating the service, and if the liens of material and supply men thereby are allowed to intervene, it would seem to be no hardship to hold any seaman guilty of laches who does not take steps to protect his claim within a reasonable time, estimated from the employment or voyage upon which the boat immediately enters after the accrual of the wages in question. .

In the present instance the boat had been away from the harbor on a trip for sand. Process had been awaiting her in this harbor, but service could not be made. As soon as she returned, the libels were acted upon, the vessel sold, and the claimant seaman, Brickley, having returned from a voyage of his own within the space of a few days, petitioned for leave to file his libel. As a seaman his wages are entitled to priority.

The defense of laches which is urged would seem to be insufficient, and the motion will be granted.