THE PROCEEDS OF THE GRATITUDE.[1]

BOURDON *v*. THE PROCEEDS OF THE GRATITUDE and nine other cases.

(*District Court, S. D. New York.* April 25, 1890.)

1. MARITIME LIENS—SUPPLIES—VESSELS PLYING IN HARBOR—PRIORITY.
    Liens for supplies furnished to vessels making short trips about the harbor allowed their priority for 40 days.
2. SAME—DAMAGES FOR NEGLIGENT TOWAGE—PRIORITY.
    Liens for supplies, by the long-prevailing maritime law, take precedence of a lien for damage to cargo, on the same voyage, and similarly to damage arising from negligent towage on the same voyage.

In Admiralty.

The steam-tug Gratitude, belonging to this port, was libeled for supplies by the Communipaw Coal Company, and by the Hoboken Coal Company, on August 26, 1889. She was arrested by the marshal on August 29th, and sold on the 3d of October, 1889. The net proceeds, after defraying the expenses of sale and the marshal's fees, were paid into the registry of the court, amounting to $3,343.72. In all, 10 libels were filed against the tug, or her proceeds. The claims, as allowed, amount to $4,171.95. Upon the libel of Bourdon there was found due $452.32, including costs. His claim was for damages incurred through the negligence of the tug in towing his vessel on August 28, 1889, two days after the first libels were filed. Two libels were for wages; the rest were for materials, repairs, supplies, and labor furnished to the tug. More than two-thirds of the amounts of those items were over a year old.

*Carpenter & Mosher*, for libelant.

*Alexander & Ash*, for lienors.

BROWN, J. The final reason given for the decision in the case of *The R. S. Carter*, 38 Fed. Rep. 515, affirmed, 40 Fed. Rep. 331, a tug which made daily trips about this harbor, is that "the rule extends [unduly] the duration of the liens of material-men," so as to destroy the security of the damage liens. There the supply liens amounted to $1,072. All arose on previous voyages or trips from nearly two to seven months before the trip on which the collision lien accrued, except the small sum of $26; and, if allowed priority, they would have absorbed the whole fund, and they were postponed to a lien for collision with an independent vessel on the tug's last voyage. The present case is not like that, which was one of damage done *in invitum* to an independent vessel. This is a case of damage arising by negligence under a voluntary contract of towage. Towage damage, as respects the lien for negligence, is like cargo damage. It is manifestly immaterial whether the case is one of cargo taken on board, or towed along-side, or on a hawser. The other reasons given for the decision in the case above cited have no application to liens for damage to cargoes or to tows. The *rank* of a lien, moreover, does not depend

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

on the form of pleading to enforce it. It is a part of its character and quality at its inception, and depends on the facts out of which it arises. But the reason above quoted for shortening the *duration* of the priorities of supply liens as affecting the security of all damage liens arising on *subsequent* voyages or trips is a sound one, and is applicable by analogy to this case, though a case of voluntary relation between the parties.

The general maritime law adjusts all liens by the voyage. By this law, as applied everywhere and without exception since the ordinance of Louis XIV., more than two centuries ago, supply liens have been held to be superior in rank to liens for damage to cargo on the same voyage, wherever such liens have been recognized at all. By similitude they are therefore superior to towage damage. The anomalous law of England on the subject of liens has little or no application. No damage liens are there recognized except for collision, and no lien in favor of material or supply men except by bottomry. The statements of recent English text-books, as to priorities, are not warranted by the English adjudications, and are contrary to the universal continental authorities, and to the priorities of all other maritime nations. *The Young America*, 30 Fed. Rep. 794–800.

By the general rule, however, the priority of liens continues only till the next voyage. The liens connected with every new voyage start with a priority over all former ones after the ship has sailed, if there has previously been opportunity to enforce them. A further continuance of the original priority of supply liens diminishes the security of liens for damage to cargoes or to tows accruing on subsequent voyages. The principle of the decision first above cited requires, therefore, that the long continuance of such priority beyond the voyage to the extent heretofore allowed since the case of *The J. W. Tucker*, 20 Fed. Rep. 129, decided in part with a view to harmonize with decisions in other districts, should be much reduced, so as not to violate the general intent and provision of the maritime law as to the protection it is designed to afford to damage claims as they arise on successive voyages. If the general maritime rule, however, were applied literally to the daily or hourly trips of harbor tugs, treating such trips as voyages, liens on them would be practically disallowed altogether, since business could not be carried on with daily libels. In harbor cases, therefore, unless liens for supplies are to be practically abolished altogether, the letter of the general maritime rule cannot be followed, but its general spirit and purpose only. This plainly is to give the ship a short credit, to enable her to earn her freight, to collect it, and pay her bills. The settled practice in this country has sustained these liens in harbor cases for a time. In *The Frank G. Fowler*, 17 Fed. Rep. 653, the priority for a damage lien on towage was continued for 19 days, during a period of daily voyages. But it is an anomaly that a European steamer, which is here but a short time, should shift these priorities with every voyage, *i. e.*, every 5 or 6 weeks, while the original priority on a tug-boat, which remains here, and is amenable to process practically all the time, should continue for as many months or longer.

1 think the time allowed for retaining priority in these harbor cases may be justly reduced to 40 days. That will give the short credit incident to the usual rendering of monthly bills, and 10 days more for settlement, or libeling the boat in case of non-payment. It accords in some degree with the period of modern Atlantic voyages; it does not exceed the time ordinarily enjoyed by the ship in the ante-steam period; and it is short enough not to imperil, as a rule, the security, or the partial security, afforded to damage claims, which the maritime law designs also to protect, though subordinately to contract liens on the same voyage, according to the universal practice (except under peculiar circumstances) of at least the last 200 years. The long extension of time heretofore given has led to evils and abuses here, which observation satisfies me ought to be corrected by a nearer approach to the general maritime rule; and the time limit of 40 days, after which such liens will be held to lose their priority as regards any liens arising on a subsequent voyage, or trip, will, I think, subserve all that necessity and that encouragement of commerce for which maritime liens have been created, and for which they are preserved; and that time will not ordinarily or substantially prejudice damage liens, which are of a lower rank, beyond that inferiority which for centuries has been assigned to them as *non-beneficial liens.* The time limit is, indeed, an arbitrary limit; and so is the season limit, or any other limit that can be adopted for harbor tugs consistently with the existence of such liens at all for any practical use. Any other rule than the voyage rule must be arbitrary, and that rule would leave no practical security whatever.

In the above cases there will be paid (1) seamen's wages; next, (2,) supply liens arising within 40 days before August 28, 1889, on which day the towage lien for damage accrued; next, (3,) the lien for damage in towing; next, (4,) the residue to be divided *pro rata* among the remaining claims for supplies. The costs are allowed with the claims.