## THE GLEN IRIS.

### BURTIS v. THE GLEN IRIS.

(District Court, E. D. New York. December 2, 1896.)

ADMIRALTY—SALE OF VESSEL—LIEN ON DOMESTIC VESSEL UNDER STATE LAW—COSTS —DISTRIBUTION OF PROCEEDS.

In disposing of the proceeds of the sale of a steam tug plying in New York harbor, against which decrees exceeding in amount such proceeds have been rendered upon default in favor of different parties for seamen's wages, damages for collision, and for repairs, supplies, and wharfage, extending over a year and a half,—the claims of the latter class being made liens under the state law by specifications filed in the county court,—the claims for wages having been first paid in full, and the sum remaining being insufficient for all other claims, priority in the distribution of the remainder was given to those claims for which monthly bills had been rendered and liens obtained within 40 days before the vessel was attached, and before the incurring of the liability for collision. Next in order of payment was placed the claim for damages by collision which had accrued 30 days before the first libel was filed; and the remainder of the fund was applied, so far as it would go, towards liens contracted subsequent to the incurring of liability for damages by collision. The Gratitude, 42 Fed. 299, followed.

On July 29, 1896, Divine Burtis, Jr., filed a libel against the steam tug Glen Iris for repairs, from April 18, 1895, to June 2, 1896, under which the tug was attached, and afterwards, on August 26, 1896, sold for $1,050.

On July 31st, the Moquin-Offerman-Heissenbuttel Coal Company filed a libel against the tug for coal furnished on monthly bills between June 1, 1895, and July 31, 1896, claiming a lien on the tug as a domestic vessel under the New York statute of April 24, 1862, and its amendments. On August 3d, Robert Keasby filed a libel against the tug for supplies and repairs furnished in December, 1895, also claiming a lien under the state statute. On August 7th, Joseph Meron, owner of the canal boat Gen. S. Moffitt, filed a libel against the tug for a collision occurring on June 28, 1896. On August 11th, H. G. Townsend and two others filed libels against the tug for wages. On August 12th, Caroline Ruther filed a libel against the tug for supplies furnished between May 16, 1896, and July 7, 1896, claiming also a lien under the state statute. On the same day, Bernard H. Seemann filed a libel against the tug for supplies furnished between May 16 and July 7, 1896, claiming a lien under the state statute. On August 17th, George E. Lanagan filed a libel against the tug for repairs made between July 7 and 14, 1896, claiming a lien under the state statute. On August 19th, Eugene Sullivan filed a libel against the tug for wharfage from February 14, 1895, to June 12, 1896, claiming also a lien under the state statute. No appearance was made on behalf of the tug in any of the cases. Upon reference to the commissioner, testimony was taken in the several cases, and upon the commissioner's report a decree was entered in each case against the tug for the amount found to be due, the aggregate considerably exceeding the proceeds of the sale of the tug. The decree for seamen's wages was paid in full, and the causes are now brought on for hearing as to the disposition of the remainder of the proceeds of the sale of the tug.

Macklin, Cushman & Adams, for Burtis.
Alexander & Ash, for the coal company and Lanagan.
Peter S. Carter, for Keasby, Ruther, and Seemann.
Hyland & Zabriskie, for Meron.
James Troy, for Sullivan.
J. P. Henderson, for Townsend.

BENEDICT, District Judge. In these cases several questions have arisen in regard to the distribution of the proceeds of the tug Glen Iris, a domestic vessel, which was sold under a decree of this court. Claims for wages, as to which none of these questions can arise, have been already paid, and the fund is not enough to pay all the other claims. It will be sufficient for the case, as I understand it, for me to say that the clerk, in distributing the proceeds, after payment of the fees of the officers of the court, should pay, first, the liens which existed upon the vessel under the state law, excluding all cases in which monthly bills had not been rendered 40 days prior to the incurring of the liability to Meron for negligent towing of his boat, June 28, 1896, and making a rest in the monthly accounts for supplies at that date; next should be paid the claim of Meron; and, out of any surplus remaining after paying Meron's claim, the liens that were created subsequent to the contracting of the liability to Meron. Costs and disbursements should be paid with each claim in its order. The claim for wharfage will take the same course. The amount of wharfage due at the time of the origin of Meron's claim should be paid prior to that; the rest of it, subsequent. The application of the rule for retaining priority of liens in such cases, laid down in The Gratitude, 42 Fed. 299, produces the above results. None of these questions arose in the case of The S. W. Morris, 59 Fed. 616, where the fund was sufficient to pay all.