THE EDITH.

(District Court, W. D. Washington, N. D.   August, 1914.)

No. 2723.

1. SHIPPING (§ 69*)—WAGES OF MASTER—STATE STATUTE GIVING LIEN—"FOR
   ALL SERVICES RENDERED ON BOARD."
      Under Rem. & Bal. Code Wash. § 1182, which makes vessels liable "for
   services rendered on board," a master, as well as members of the crew,
   has a lien for wages.
      [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 201, 293–307,
   312, 313, 315, 317, 318;  Dec. Dig. § 69.*]

2. MARITIME LIENS (§ 37*)—SUPPLIES AND REPAIRS—LIMITATION OF TIME—
   PUGET SOUND TUGS.
      The rule adopted for future cases in the Western district of Washing-
   ton, fixing a limitation of 90 days beyond which claims for repairs, sup-
   plies, etc., furnished in their home port to Puget Sound tugs and vessels
   making daily or weekly trips, shall lose their priority and the right to
   share pro rata with claims arising within that time.
      [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 58–70;
   Dec. Dig. § 37.*]

In Admiralty.   Suit by the Heffernan Dry Dock Company against
the steamship Edith, in which the Carbon Hill Coal Company, the
Turner & Pease Company, Barton & Co., E. A. Swift, and William
Whiteside became interveners.   On exceptions to report of commis-
sioner.   Overruled.

Bronson & Robinson, of Seattle, Wash., for libelant.

Huffer, Hayden & Hamilton, of Tacoma, Wash., for intervener Car-
bon Hill Coal Co.

Frank A. Paul, of Seattle, Wash., for interveners Barton & Co. and
Turner & Pease.

Tucker & Hyland, of Seattle, Wash., for interveners Swift and an-
other.

NETERER, District Judge.   On April 15, 1914, libel was filed by
Heffernan Dry Dock Company, a corporation, monition issued, and
steamship Edith taken into custody by the United States marshal.
Thereafter various intervening libels were filed for furnishing supplies,
repairs, and other necessaries, also by the master and members of the
crew for wages.   The vessel was duly sold and the money paid into
the registry of the court.   The cause was referred to the United States
commissioner, who took the testimony, reported his findings of fact
and conclusions of law, and the matter is now before the court on the
exceptions to the report of the commissioner.

[1]   The claims of the master and crew were reported as first claims,
and, on stipulation of the parties, the sum due the members of the
crew was paid.   Exception was filed to the allowance of the master's
wages on the ground that, under the admiralty rule, he had no lien.
While the master is presumed to look solely to the credit of the owner,
and, in the absence of a statute, it is well settled in this country that
he has no lien (The Rupert City [D. C.] 213 Fed. 263), the statute

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Washington (section 1182, Rem. & Bal. Code) makes all vessels liable "for services rendered on board," without any exception. Hence the master, as well as the mariners, has a lien for unpaid wages earned on board. The Laurel (D. C.) 113 Fed. 373.

Intervening libelants, Carbon Hill Coal Company, Barton & Co., and Turner & Pease have filed exceptions. The exceptions of Turner & Pease are simply based upon the fact that the commissioner failed to report that the certificate of trade-name was filed, and that no proof was reported of the payment of the corporate license fee, as provided by the laws of Washington, but since the claims were allowed, and no exception filed, the omission is immaterial. Exception No. 2 of the Barton Company is in the same condition. Exception No. 1 of the Barton Company was allowed by consent of parties.

[2] The Carbon Hill Coal Company excepts to the allowance of libelant and intervening libelants' claims of equal class with it, on the ground that such parties "have been guilty of such laches and extension of credit that they are not entitled to share pro rata with the intervener Carbon Hill Coal Company, whose supplies were furnished between the 12th day of December, 1913, and the 14th day of February, 1914, and that such laches have prejudiced said Carbon Hill Coal Company," etc. It is shown that the vessel operates in the Seattle Harbor and Puget Sound, and that the material and labor of the various claimants were furnished at various periods of time, ranging from 30 days to 8 months prior to the institution of this action. It is urged that the court fix an arbitrary period in which claims for supplies, materials, repairs, etc., shall lose their priority, and that the claims be classified into 40-day periods and given priority in the inverse order. The admiralty rule gives supplies furnished for a late voyage rank over those of a prior voyage, but where frequent short voyages are made, and perhaps daily trips, occasioning open, overlapping accounts, a different proposition is presented than vessels navigating the high seas, and in such cases the rule cannot be applied, as the business could not be carried on with daily libels, which would be necessary, since the last supplies furnished would have priority. No arbitrary rule has been followed in this court, but it has been the custom to prorate admiralty claims of the same class, irrespective of priorities of time. This practice, no doubt, was adopted because liens for materials, supplies, etc., furnished a vessel in the home port prior to the act of June 23, 1910 (36 Stat. 604, c. 373 [U. S. Comp. St. 1901, §§ 7783–7787]), depended upon the statute of Washington (Rem. & Bal. Code, § 1182). This section extends the limitation for continuance of the lien for a period of three years from the time the cause of action accrued. This section, while it establishes a priority of time, quality, or degree, for services rendered on board, for materials furnished and work done, etc., wharfage and anchorage, for performance or nonperformance of contract, and for damages to person and property, in the order given, did not fix a time of priority as between the claimants. This statute has been, so far as the supplies and materials in issue are concerned, superseded by the act of June, 1910.

Various periods have been fixed by the courts in the various dis-

tricts. In New York Harbor, claims less than 40 days old are pre-ferred. The Gratitude (D. C.) 42 Fed. 299; The Samuel Morris (D. C.) 63 Fed. 736; The Glen Island (D. C.) 194 Fed. 744. In South Carolina the funds will be distributed pro rata where the claims were created within a year The Thomas Morgan (D. C.) 123 Fed. 781. On the Great Lakes the claims of equal rank arising during the same season are paid pro rata without respect to the particular voyage. The Nebraska, 69 Fed. 1009, 17 C. C. A. 94. The same rule has been applied to the operation of canal boats. The J. W. Tucker (D. C.) 20 Fed. 129.

The period of limitation fixed by the state statute is no guide in the fixing of any period of limitation under the admiralty rule on claims coming under the act of Congress, and it being impossible, consistent with the operation of vessels in the local harbor cases, to apply the general maritime rule, except as to the spirit and purpose, it would seem as though some rule should be adopted. The spirit and purpose of the general maritime rule is to give the vessel a credit of sufficient time to earn her charges for transportation, whatever they may be, collect the same, and pay her bills. It seems to be an anomaly that the Alaska and San Francisco vessels and the steamships to the Orient, sailing from the port of Seattle, do, under the general admiralty rule, shift these priorities with every voyage (that is, about every month, and many of them several times a month), and the vessel which remains here, amenable to process at all times, should continue for three years. The long extension of time leads to evils and abuses which can well be avoided. An admiralty lien being a secret lien, no one except the parties directly interested having any knowledge, the abuses which may be occasioned become, upon the suggestion, apparent. In a place where the custom is that all settlements shall be made at least every 30 days, it seems that a period fixed beyond which the claims will lose their priority is a matter which fair dealing requires, and that a time sufficiently long to permit the owners of vessels to make all reasonable arrangements and adjustments with relation to the earnings in their business, but which would also afford a reasonable safety to persons extending credit to the vessels, would be welcomed by all. I think that, as between claimants, to retain priority 90 days should be the limit of time in these cases, where vessels are operating from the local harbors in the district, and from which they make daily or weekly trips, unless there is a special reason why the application of the arbitrary rule should not be made, which should be made to appear in the particular case.

I have conferred with Judge Cushman of the Southern Division, and am authorized to say that he agrees with this limitation of 90 days.

In view of the rule heretofore followed in this court, the rule will not be applied in this case. The exceptions are therefore overruled, and an order may be presented confirming the report of the referee.