## THE JOHN J. FREITUS.

(District Court, W. D. New York.   September 3, 1918.)

### No. 1121.

1. ADMIRALTY ⊖=101—LIENS—PRIORITY.
    Although the season rule appears to have been recognized and followed upon the Great Lakes, yet, where a tugboat was actively engaged beyond the season, the rule that claims of equal rank incurred in the same calendar year should have equal priority, while those in subsequent years should have priority over any earlier, is properly applied.

2. MARITIME LIENS ⊖=37—REPAIRS—ELECTION OF REMEDIES.
    Where libelant, which repaired a vessel, had a possessory lien, such lien merely gives the right to hold the vessel upon which repairs were made; and where the possessory lien was interrupted by the libelant's enforcement of its maritime lien, it was an election on the part of libelant to rely on its maritime lien, which took the same rank as other supply and repair claims for that year.

In admiralty.   Libel by the Buffalo Dry Dock Company against the tug John J. Freitus, her engines, etc.   On exceptions to the report of the commissioner.   Report corrected and affirmed.

Thomas C. Burke, Roland Crangle, R. E. Babcock, Ellis H. Gidley, Lawrence Coffey, and C. H. Baldy, all of Buffalo, N. Y., for claimants.
Brown, Ely & Richards, of Buffalo, N. Y., for respondent.

HAZEL, District Judge.   The libelant in a proceeding in rem against the tugboat John J. Freitus claims priority for repairs, under the 40-day rule applicable to harbor tugs prevailing in the port of New York, and also under an asserted possessory lien, In re Samuel Little,

221 Fed. 308, 137 C. C. A. 136. The season of navigation in lake ports is generally about seven months in length, but it appears that the tugboat in question was engaged in harbor towing at Buffalo during the entire year of 1916 and the fore part of 1917. On January 2, 1917, while thus engaged, she negligently caused the stranding of the steamer Alleghany, damaging her to the extent of approximately $14,081.44. The fund in the registry of the court is insufficient to pay such damage, or to pay in full the various claims for repairs and supplies accruing after the disaster. Claims were presented and allowed for repairs and supplies furnished both before and after the accident. The tugboat remained in libelant's possession after the repairs in question until October 23, 1917, when she was seized by the marshal in this proceeding. She was subsequently sold for $4,550.

The commissioner in his report stated that seamen's wages should be paid first, and after that claims for supplies and repairs furnished the tug after the disaster to the Alleghany; all such claims being of equal rank. To this finding libelant objects, contending that its repairs to the tug in June and July, 1917, should be paid prior to other claims for repairs and supplies furnished prior to the expiration of 40 days from October 23, 1917, when this proceeding was begun, and in any event that its possessory lien for repairs is superior to all other claims save claims for seamen's wages and claims accruing, if any, after June 29, 1917, when the tug was taken to the dry dock. In considering the latter contentions of libelant, the commissioner, George Clinton, Jr., in his report states:

"The Buffalo Dry Dock Company claims priority over the other repair and supply liens which accrued during the season of 1917, inasmuch as it held possession of the Freitus while those repairs were being made, and continued in possession until the seizure by the marshal, holding the Freitus as security for its claim. Counsel for the Dry Dock Company contends, therefore, that the Dry Dock Company has a common-law possessory lien in addition to its maritime lien, which gives it priority over other maritime liens which would otherwise be of equal rank with it. If the possessory lien does entitle the Dry Dock Company to priority, it is not deprived thereof by the marshal's seizure of the vessel. In my opinion, however, the possessory lien adds nothing to the maritime lien. The question does not seem to have been directly passed upon by the courts. The cases of The Ulrica (D. C.) 224 Fed. 140, and American Trust Company v. Fletcher Company, 173 Fed. 471, 97 C. C. A. 477, do not decide it. If the claim upon which the possessory lien is founded were nonmaritime, the lien would be subordinated to those arising by the maritime law, as is apparent from the analogy of a chattel mortgagee in possession, or the much stronger case of a purchaser, where, instead of a lien, ownership of the property would be in the claimant. I therefore hold that the claim of Buffalo Dry Dock Company should take equal rank with the other repair and supply claims of 1917."

[1] In considering the contention that the 40-day rule applies, the commissioner states:

"It has been suggested that the 40-day rule applied upon the Atlantic coast should be enforced. There are three rules now applied under varying circumstances: The forty-day rule, adopted in the case of harbor vessels on the Atlantic coast; the voyage rule, applied to vessels engaged in oceanic commerce; and the season rule, applied to vessels engaged in commerce on the Great Lakes. All of these rules are more or less arbitrary; the voyage rule being the only one of undoubted antiquity, both the 40-day and the season

rules having been adopted as matters of convenience, and the former never having been adopted heretofore upon the Great Lakes, so far as my information and investigation go. An examination of the authorities show that the 40-day rule was adopted on the Atlantic coast in the case of harbor vessels, as resulting in less inconvenience to vessel men and their creditors than any other rule which might be thought to apply. When it was adopted, the season rule had never been in force on the coast, inasmuch as there is no limited season of navigation there, such as there is upon the Great Lakes. For many years, however, the season rule has been recognized as applicable to vessels navigating the Great Lakes, and to my mind the adoption of the 40-day rule in Great Lakes ports would result in greater inconvenience and in unsettled business conditions to a greater extent than the adoption of a rule analogous to the season rule. It is manifestly impossible to apply the strict season rule to vessels engaged in harbor towing throughout the year, and I therefore hold that, in my opinion, the proper rule to be applied is that claims of equal rank incurred during the same calendar year should have equal priority; those of a later year having priority over those of an earlier one. This I believe coincides with what business men generally upon the Great Lakes understand to be the law, although I know of no decisions heretofore rendered establishing such a rule. The repair and supply claims, therefore, accruing during the calendar year 1916, are to be given equal priority against the fund."

The commissioner is a proficient and careful proctor in admiralty, and I am persuaded of the correctness of his decisions, and therefore concur therein. Although the season rule appears to have been invariably recognized and followed upon the Great Lakes (see The City of Tawas [D. C.] 3 Fed. 170, and The J. W. Tucker [D. C.] 20 Fed. 134), the fact that the tugboat in question was engaged beyond such period would seem to justify applying the rule that claims of equal rank incurred in the same calendar year should have equal priority, while those in subsequent years should have priority over any earlier.

[2] A possessory lien merely gives the right to hold the tug upon which repairs are made, and as such right was interrupted in the present case by libelant's enforcement of its maritime lien, which I think amounted to an election of remedies, the claim in question takes equal rank with the supply and repair claims of 1917. Benjamin on Admiralty (4th Ed.) § 132; The General Smith, 4 Wheat. 438, 4 L. Ed. 609.

The Lenahan claim, which was allowed at $33, concededly should have been $53, and the decree will make correction.

The commissioner's report is affirmed.

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes