## THE INTERSTATE NO. 2.

### (District Court, D. New Jersey. January 26, 1922.)

1. **Maritime liens ☞37—Suit in admiralty is election to abandon possessory lien.**

   A dry dock company, having possession of a tug on which it had made repairs, by electing to proceed in admiralty to enforce its maritime lien, waives any right to priority it may have had under its common-law possessory lien, and its priority rights must be determined by whatever rule the court may apply as between maritime lienors.

2. **Maritime liens ☞37—Forty-day rule, fixing priority of liens on harbor tugs, adopted in district of New Jersey.**

   The 40-day rule as to the priority of liens on harbor craft in New York Harbor, established as the settled rule in the Southern and Eastern districts of New York, will also be adopted and applied in the district of New Jersey.

3. **Maritime liens ☞37—Occasional trips outside of harbor will not take harbor tug out of 40-day rule.**

   Occasional trips by a tug to points outside New York Harbor is not ground for regarding it as other than a harbor tug, for application of the 40-day rule fixing priority of liens.

In Admiralty. Suit by the Tietjen & Lang Dry Dock Company against the tug Interstate No. 2, with other libels by the North River Coal & Wharf Company, by Philip Heipershausen and another, by James Shewan & Sons, Inc., by the M. K. Bowman-Edson Company, by the John W. Sullivan Company, and by the Williams & Wells Company against the same tug. On motion by the Tietjen & Lang Dry Dock Company for priority of lien. Denied.

Crowell & Rouse, of New York City, for libelant Tietjen & Lang Dry Dock Co.

Alexander & Ash, of New York City, for libelants John W. Sullivan Co., Heipershausen Bros., and M. K. Bowman-Edson Co.

Foley & Martin, of New York City, for libelant James Shewan & Sons, Inc.

William Matthews, of New York City, for libelant North River Coal & Wharf Co.

Weissberger & Leichter, of New York City, for libelant Williams & Wells Co.

LYNCH, District Judge. Maritime liens aggregating over $62,000 were filed and proved by the above-named libelants against the tug Interstate No. 2. The sale of the vessel in admiralty realized the sum of $25,000. The libels, according to the proofs before the commissioner, embrace in each instance separate and distinct claims for repairs, supplies, etc., which were united by each suitor in one libel. The time of accrual of each claim, amount thereof, and nature of claim, as appears from the testimony before the commissioner in each case, are as follows:

Tietjen & Lang Dry Dock Company, repairs, February 19 to May 10, 1921, $15,323.31.

John W. Sullivan Company, repairs, May 28, 1920, to January 30, 1921:

| | |
|---|---:|
| May 29, 1920 | $   625.00 |
| June 30, 1920 | 1,124.24 |
| August 31, 1920 | 295.00 |
| December 31, 1920 | 660.00 |
| January 3, 1921 | 5,282.27 |
| January 3, 1921 | 3,992.39 |
| January 31, 1921 | 102.38 |
| | $12,081.28 |

James Shewan & Sons, Inc., repairs, March 22, 1920, to November 19, 1920:

| | |
|---|---:|
| March 22, 1920 | $ 2,750.00 |
| March 30, 1920 | 4,150.00 |
| | 12,432.28 |
| | 400.00 |
| April 16, 1920 | 993.36 |
| April 24, 1920 | 311.65 |
| May 13, 1920 | 1,336.86 |
| June 15, 1920 | 352.50 |
| August 17, 1920 | 7,794.00 |
| | 1,347.86 |
| October 9, 1920 | 763.03 |
| October 9, 1920 | 877.25 |
| November 19, 1920 | 807.72 |
| | $34,016.51 |

Heipershausen Bros., repairs, December 13, 1920, to January 18, 1921:

| | |
|---|---:|
| December 31, 1920 | $  848.75 |
| January 28, 1921 | 300.03 |
| | $1,148.78 |

M. K. Bowman-Edson Company, chandlery, November 3, 1920, to May 7, 1921:

| | |
|---|---:|
| November 8, 1920 | $ 49.51 |
| November 22, 1920 | 33.90 |
| November 30, 1920 | 34.48 |
| May 17, 1921 | 38.31 |
| | $156.20 |

North River Coal & Wharf Company, coal:

| | |
|---|---:|
| January 1–11, 1921 | $255.00 |
| May 10–13, 1921 | 707.71 |
| | $962.71 |

Williams & Wells Company, chandlery:

| | |
|---|---:|
| January 3, 1921 | $203.35 |
| January 4, 1921 | 42.20 |
| February 7, 1921 | 3.44 |
| | $248.99 |

[1] Between February 14 and May 10, 1921, the Tietjen & Lang Dry Dock Company made repairs to the tug at its yard in Hoboken,

amounting to $15,323.31. Subsequently the dry dock company permitted the owner to take the tug out of its possession for work in and about New York Harbor. The vessel had returned for minor repairs and was in the possession of the Tietjen & Lang Company at the time that *that company* instituted proceedings *in admiralty* under which the vessel was seized by the marshal of this district—the Tietjen & Lang Company being the first libelant to institute proceedings. It insists that it is entitled to priority and advances, as one reason, a claim of "possessory lien" by reason of the vessel having been in its possession when it was seized in the admiralty suit. The case of The Ulrica (D. C.) 224 Fed. 140, is cited in support of this contention.

In The Ulrica Case the Weehawken Dry Dock Company had in its possession a vessel on a claim for repairs, and at the suit of a third party the vessel was taken out of the possession of the Weehawken Company. Judge Rellstab held that the Weehawken Dry Dock Company was entitled to assert its common-law lien, notwithstanding the taking of the vessel out of its possession by process instituted in admiralty by another claimant. In the instant case the admiralty proceedings were instituted by the Tietjen & Lang Company, the company which insists that it is still entitled to assert a common-law lien. I am not convinced that the Tietjen & Lang Company did not waive its common-law lien when it permitted the owner to use the vessel on one or two occasions after the repairs were completed. However, even if it had such a lien at the time of seizure, it would be disposed of under the authority of the case of The John J. Freitus (D. C.) 252 Fed. 876, in which Judge Hazel said:

"A possessory lien merely gives the right to hold the tug upon which repairs are made, and as such right was interrupted in the present case by libelant's enforcement of its maritime lien, which I think amounted to an election of remedies, the claim in question takes equal rank with the supply and repair claims of 1917."

A reading of the libel filed by the Tietjen & Lang Dry Dock Company discloses that, instead of relying upon a possessory or common-law lien, its suit was for the purpose of establishing a maritime lien. The so-called possessory lien is not even mentioned in its libel. A more complete case of election of remedies, I do not think, could be presented. Having elected to proceed in admiralty, it must therefore stand on a common footing with other maritime lienors, subject to whatever rule the court decides should control the preference or ranking of claims, which brings us to the next proposition.

[2] In what order shall the maritime liens in the instant case, which are of the same class (i. e., repairs and supplies) share in the distribution of sale? Upon vessels on the high seas, making irregular voyages, a preference is based on the voyage; the claims of the last voyage taking priority over those of earlier voyages. On the Great Lakes and in waters in which the seasons of navigation are affected by ice, a season rule has been applied, and in this district in the case of The John Dillon, 46 Fed. 527, decided by Judge Green in 1891, and followed by the same judge in the case of the tug Wm.

C. Nicol (not reported), what is known as the yearly rule was applied; that is, claims arising within one year were given preference over claims arising during the previous year.

In 1890, however, Judge Brown, in the Southern district of New York, in the case of The Gratitude (D. C.) 42 Fed. 299, laid down what has been called a "40-day rule" applicable to harbor craft. Forty days were fixed as the period during which general maritime liens retain their priority. This 40-day rule was not followed in this district by Judge Green in the case of the tug Wm. C. Nicol decided in 1896, but since that time it has been followed many times in the Southern and Eastern districts of New York and with the approval of the Circuit Court of Appeals for the Second Circuit has come to be the established rule in those two districts. See The Samuel Little, 221 Fed. 308, 137 C. C. A. 136.

The waters of New York Harbor touch not only the Southern and Eastern districts of New York, but also this district, and it seems to me that it would be extremely unwise not to have a uniform rule in the three districts with respect to New York Harbor craft. Notwithstanding the decision of Judge Green, it does seem to me that the proper thing to do now with respect to harbor craft would be to adopt the "40-day rule," and apply it to the instant case.

[3] It has been suggested that the Interstate No. 2 was not strictly a harbor tug, because it occasionally made trips to Yonkers and Dobbs Ferry, up the Hudson, and to Kearny and Grasselli, in New Jersey, all of which places are located somewhat beyond the confines of New York Harbor. Yonkers is no farther away from the Battery than are points on Staten Island located in the harbor, and Grasselli and Kearny are certainly no farther away from the Battery than harbor points in the Eastern district. The tug mainly was engaged in harbor navigation. I do not think occasional trips to points outside the harbor limits should oblige the court to regard it as other than a harbor vessel.

As was stated on the argument of the motion, the only point required to be decided by me at this time is the rule under which the clerk, or a commissioner, in case a commissioner is necessary, will fix the amount and order of payments.