NORTHERN COMMERCIAL CO., a Delaware corporation, Libelant,

v.

Oil Screw Called THE PUFFIN o/n 215,-085, her engines, tackle, apparel, furniture and equipment and Salmon By Products Company, an Alaska corporation, her owner, Respondent,

and

General Petroleum Corporation, a corporation, Intervenor,

and

Northern Machine Works & Marine Railways, Inc., an Alaskan corporation, Intervenor,

and

Edward Allain and Andrew Thompson,. Intervenors.

No. 3783–KA.

District Court, Alaska, First Division, Ketchikan.

Feb. 4, 1959.

---

4. For example, at one of the premises—613 2nd Street, N. E.—a police officer had placed twelve bets.

C. L. Cloudy, of Ziegler, Ziegler & Cloudy, Ketchikan, Alaska, for libelant.

W. C. Stump, of Stump & Bailey, Ketchikan, Alaska, for intervenor General Petroleum Corp.

Floyd O. Davidson, Ketchikan, Alaska, for intervenor Northern Machine Works & Marine Railways, Inc.

Lester O. Gore, of Gore & Jernberg, Ketchikan, Alaska, for Edward Allain and Andrew Thompson, intervenors.

KELLY, District Judge.

Pre-trial hearing held in this case revealed that the libelant was seeking foreclosure of a preferred marine mortgage against the Oil Screw Vessel Puffin, the balance of which mortgage amounted to $14,996.13, which included principal and interest to January 21, 1957, plus interest at 8% from that date, plus $800 attorney fees as provided by the mortgage. The mortgage, based on a promissory note dated May 5, 1954, was executed June 10, 1954, and duly recorded with the Customs officials in Ketchikan, Alaska, on July 11, 1954. Simultaneously an affidavit was filed by the mortgagor stating that no prior liens existed at the time the mortgage was executed.

Libelant, in addition to the mortgage, seeks recovery on a maritime lien based upon goods, merchandise, and repairs furnished to said vessel at Ketchikan between August 31, 1955, and November 9, 1956, in the amount of $907.18 plus interest at the rate of 8% per annum from November 9, 1956.

Intervenor Northern Machine Works & Marine Railways, Inc. (Machine Works) seeks foreclosure of a maritime lien in the amount of $1,773.53 principal and interest arising between September 30, 1949, and May 31, 1954, and the further sum of $2,042.95 arising between June 30, 1954, and January 1, 1957. The first amount claimed postdates the libelant's mortgage and the second sum antedates said mortgage. In addition to this, Intervenor Machine Works seeks foreclosure of an assigned maritime lien in the amount of $4,384.27 plus interest in the amount of $363 up to April 1, 1957, which claim arose between April 19, 1954, and October 17, 1956.

Intervenor General Petroleum Corporation (Petroleum) seeks foreclosure of a maritime lien in the amount of $3,-352.01 plus interest. This claim arose between July 23, 1950, and June 5, 1954, and which lien they claim antedates libelant's mortgage.

By stipulation the claims of Intervenors Allain and Thompson for wages were paid out of the registry of the court to said Intervenors from proceeds of the sale of the vessel.

The vessel Puffin was sold under interlocutory sale to the libelant, who in turn sold the boat to a third party under a maritime conditional sales contract, payments being made into the registry of the court. A stipulation between the

parties settled the problems connected with the disbursal of the funds upon the conclusion of this action. It was agreed by all parties hereto that the priorities heretofore established in this court by the case of Metlakatla Indian Community v. The Oil Screw or Vessel called The Welcome et al., #3329–KA (decided by Judge George W. Folta November 20, 1953, in the United States District Court for the District of Alaska, Division Number One at Juneau). This decision should be followed in this case in disposal of the balance of the funds from the sale of the vessel remaining in the court registry. For the record, and for future guidance, the decision is quoted below in full:

"The only question which has not been disposed of by stipulation in this controversy is whether the liens should be accorded priority in inverse order of their creation, according to the well known rule in admiralty, or whether the Court should fix a preference period corresponding to the voyage rule, 3 Benedict on Admiralty 296, Sec. 465, of such length as would recognize, so far as it may be deemed advisable to do so, the credit practices in connection with financing the operation of local fishing vessels. Cf. Interstate No. 1, 2 Cir., 290 F. 926, 929–936; Todd Shipyards, Inc. v. City of Athens, D.C., 83 F.Supp. 67, 80–81.

"It appears that it has been the general custom in this Division, in connection with maritime transactions giving rise to liens, to treat them as of equal rank and prorate proceeds from the sale of vessels. The Intervenor Lieber seeks to invoke the inverse order rule, while the parties urge that recognition be given to local customs, and that a rule akin to those adopted for Puget Sound, the Great Lakes and New York districts be adopted.

"I am of the opinion that, so far as the local fishing industry is concerned, the preference period should not exceed one year. Therefore, for the governance of future and pending cases, a preference period of one year preceding the filing of the libel is established, during which maritime liens not entitled to priority by reason of their nature or character will be given equal rank, regardless of the time of their creation during such period. All other liens arising outside of that period will be prorated.

"A decree may be submitted in accordance herewith."

At the trial itself, there remained for the determination of the Court the single question of whether or not, under the law as applied to the facts to be brought out on the trial, the mortgage was a preferred marine mortgage. The controversy herein resolved itself into a contest between libelant and Intervenor Machine Works as to whether or not libelant's mortgage is a preferred marine mortgage under the Ship Mortgage Act.

It developed on the pre-trial hearing that the only matters to be actually tried before the court concerned the validity and the priority of the claims of the various parties to this action.

This is an action in rem and the vessel owners did not appear in the case. Intervenor Petroleum does not contest the libelant's claim that the mortgage is a preferred marine mortgage under the Ship Mortgage Act. The amounts due the wage-claimant intervenors have been paid to them by stipulation from funds received from the sale of the vessel which were in the court registry.

The facts adduced at the trial brought out that the vessel Puffin was used as a towboat within the meaning of 46 U.S.C.A. § 922(a). It was also established that it was of less than 200 gross tons.

The official document of registry of the Puffin declared on its face that the service of the Puffin was "fishing and freight," and so far as the description of the vessel in the official document of registry is concerned, it appeared in all respects eligible to receive a preferred

mortgage under the Ship Mortgage Act. The witness Sage, libelant's general manager, testified that libelant had no knowledge that the Puffin was used for towing. The witness Bailey, Deputy Collector of Customs at Ketchikan, testified that he and the rest of the personnel of the Customs Office received and placed on the record preferred marine mortgages and that among the duties of his office they were required to determine if a mortgage presented for recording contained the proper recitals and data required in the Ship Mortgage Act, and if the ship's document of registry appeared to be regular on its face the mortgage would qualify for recording as a preferred marine mortgage. He further testified that if a mortgage was presented for record on a vessel whose document of registry stated that the vessel was used in fishing and freight but which he knew was being used as a towboat, he would report the same to his superiors. Certainly it is only natural to expect that the witness Bailey, if he knew of a false statement in the ship's document, would report such fact to his superiors, but there was no report made in this case and Bailey did not know the vessel was being used as a towboat.

■ The only matter to be determined by this Court is the sole question of law as to whether the mortgage with which we are concerned is a preferred marine mortgage under the Ship Mortgage Act, 46 U.S.C.A. § 911 et seq., when such mortgage is placed on a vessel which is under 200 tons and whose document of registry shows its service to be "fishing and freight" while, as a matter of fact, it was actually used for towing, the mortgagee having neither actual nor constructive knowledge of the service in which the vessel is engaged.

Both parties to this controversy agree that this question has apparently not been decided by a court of record and for this reason the Court feels that it should go into the matter fully in order to reach the proper determination.

The pertinent part of the act (46 U.S.C.A. § 922(a)) reads as follows:

"(a) A valid mortgage which at the time it is made, includes the whole of any vessel of the United States (other than a towboat, barge, scow, lighter, car float, canal boat, or tank vessel, of less than two hundred gross tons), shall, in addition, have, in respect to such vessel and as of the date of the compliance with all the provisions of this subsection, the preferred status given by the provisions of section 953 of this title, * * * "

The Puffin was under 200 tons and was actually engaged in the service of towing at the time the mortgage was placed upon her, and on the face of it falls within one of the categories listed in the act to which preference would not attach. The official document of registry of the Puffin stated on its face, however, that the service of the Puffin was "fishing and freight," and thus described a vessel that was eligible to receive a preferred marine mortgage under the Ship Mortgage Act. The libelant points out that the Ship Mortgage Act was originally passed by Congress in an effort to strengthen the maritime industry by devising a mortgage which would carry a maritime lien superior to a supplier's lien in order to encourage capital to make itself available to the needs of the shipping industry. The primary, if not the sole, purpose of the act was to make ship mortgages desirable as security and thereby assist the shipping industry. Detroit Trust Co. v. Barlum, S. S. Co., 1934, 293 U.S. 21, at pages 38 and 39, 55 S.Ct. 31, at pages 35–36, 79 L.Ed. 176; The Favorite, 2 Cir., 1941, 120 F.2d 899, at page 902.

In 1935, under the sponsorship of the Reconstruction Finance Corporation, the act was amended to enable the R.F.C. to loan money to distressed fishermen, whose vessels are all under 200 gross tons, and receive preferred mortgage security. See Congressional Record Vol. 79, part 5, pages 5367–5380.

All the intervenors, with the exception of Machine Works, have adopted libelant's view in reference to the mortgage.

The Intervenor Machine Works contends that the fact that the Puffin was engaged in towing deprives the mortgage of its preference regardless of what appears on the document of registry of the vessel, and asserts that if it were otherwise, it would be a slick device for cutting off subsequent food faith creditors of the vessel simply by having the certificate of registry of a towboat state that the vessel was used in fishing or for some use not prohibited by the Ship Mortgage Act. Intervenor Machine Works further contends that while the doctrine of estoppel might arise as between the mortgagor and the libelant mortgagee, based upon the contents of the certificate of registry, no third party should be bound by what the document of registry states on its face if, as a matter of fact, the vessel is not regularly engaged in that activity.

What the Intervenor Machine Works fails to take into consideration is the fact that it is a fraud, or at least an error, of the mortgagor in not having the document of registry of the vessel truly reflect the use to which it is put, as required by law. It is not the fault of the libelant who relied on such document in advancing the funds and furnishing equipment to the vessel, depending upon the preferred character of the marine ·mortgage to protect and secure the debt. There is absolutely no evidence that any of the intervenors, when they extended their credit, knew that the boat was a towboat, or that they extended their credit in the reliance upon the fact that the mortgage was not a preferred marine mortgage. Nor is there any evidence that Intervenor Machine Works or any other intervenor ever made any inspection of the vessel.

There is likewise no evidence in the case that even an inspection of the vessel Puffin would have revealed that she was used as a towboat. Certainly the Court can take judicial notice that many a vessel which is used for freight, or even for fishing, could be used for towing without any perceptible change in the appearance of the vessel.

Apparently, from the evidence, the Customs officials are not required by any of their rules or regulations to go "behind the document" in accepting the mortgage for record. The law does not require the U. S. Government officials of the Customs Service to do so. If the Customs officials are not required in any manner to inspect the vessel to assure themselves that the ship's document for registry does properly or clearly state on its face the matters required by law to be thus stated, this Court does not see why the mortgagee should be required to do so. This is especially true where the evidence, as here, does not reveal that such an inspection would, in fact, show conclusively that the Puffin was used exclusively for towing purposes.

This Court therefore holds that the libelant's mortgage is a preferred marine mortgage under the Ship Mortgage Act, supra, and libelant may have judgment and decree accordingly.

The foregoing shall constitute Findings of Fact and Conclusions of Law unless the parties desire additional Findings or Conclusions.

Judgment in accordance herewith may be submitted.