SECURITY PACIFIC BANK, et al.
v.
M/V CONQUEST, et al.

High Court of American Samoa
Trial Division

CA No. 17-84

January 10, 1985

Counsel: For plaintiff Security Pacific, Roy Hall by Gary Hynds
For intervenor Star-Kist, Talalelei Tulafono

GARDNER, C.J.

On December 5, 1984, I made a ruling in an order denying plaintiff's motion for summary judgment. That ruling contained a serious flaw. It was wrong.

40

At issue was the meaning of a sentence contained in 46 U.S.C. 951, which reads, "Original jurisdiction of all such suits [foreclosure of preferred ship mortgages] is granted to the district courts of the United States exclusively." I held that since this court is not a United States district court it has no such jurisdiction. The ruling was succinct, simple, direct, straightforward—and erroneous. This unfortunate result was obtained by the simple expedient of extracting that one sentence from the statute and construing its meaning without reference to the entire statutory scheme. However, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. The law favors a rational and sensible interpretation which will reach a reasonable result consistent with the statutory scheme. Therein lay my error. I failed to consider the entire statute and the purpose behind the statute in making my ruling.

A statute is passed as a whole and not in parts, sentences and sections. It is animated by one general intent or purpose. Here, the intent of the ship mortgage act was to stimulate private investment in the shipping industry by affording substantial security to investors. Detroit Trust Co. v. The Thomas Barlum (1934) 293 U.S. 21, 39. That purpose is hardly advanced by a ruling which limits ship mortgage foreclosures to United States district courts at all times and all places. Obviously, there must be a United States district court available or the sentence doesn't make any sense. Lacking a United States district court to exercise its "exclusive," "original" jurisdiction, the mortgage can be foreclosed in any court exercising valid admiralty jurisdiction.

That is the only interpretation that is consistent with the statutory purpose and scheme. Otherwise, all a ship owner has to do is keep his ship in a port not within the jurisdiction of a United States district court (American Samoa) and thumb his nose at his creditors. This would hardly "stimulate private investment in the shipping industry by affording substantial security to investors."

The fact of the matter is that this one sentence was put into the statute for the sole purpose of insuring that no state court would attempt to exercise jurisdiction over a ship mortgage. This was so obvious to admiralty expert J. Bond Smith that in his article entitled "Ship Mortgages" in 47 Tulane Law Review 608 he disposes of it in a curt footnote at page 611, "The grant of exclusive jurisdiction in the district court should not be interpreted as meaning a preferred mortgage may not be foreclosed in the court of a foreign nation. The legislative intent in the exclusive grant was to preclude state court jurisdiction." Called upon to substantiate this statement, Mr. Smith has filed an affidavit containing a legislative history of the act which clearly indicates such was the legislative intent. See H. Bond Smith affidavit of December 20, 1984.

Admiralty lawyer Richard Barnett (See Barnett affidavit of December 11, 1984.) advises us that he has been involved in preferred ship mortgage proceedings against United States flag vessels in Egypt, India, Singapore and Aden. (Mr. Smith adds Japan.) I would presume that such proceedings were a matter of comity or treaty. Rather obviously, no United States district court had jurisdiction in any of these locales. The United States government was involved in most of these proceedings and, according to Mr. Barnett, "no suggestion was even made that the foreign courts lacked jurisdiction to foreclose the preferred mortgages on those vessels given pursuant to the U.S. Ship Mortgage Act." Apparently, the first such suggestion came as a result of a temporary—I hope—aberration on the part of the Chief Justice of the High Court of American Samoa.

41

Additionally, it would appear that such mortgages have been foreclosed in United States territorial courts, although admittedly this precise issue was not raised. (See Ares v. S.S. Colon (D.C.Z. 1967) 269 F. Supp. 763; Northern Commercial Co. v. The Puffin (D. Alaska 1959) 170 F. Supp. 28. Arguably, these cases are distinguishable since those courts had congressional grants of district court jurisdiction under the so-called "territorial exception" to the rule that only United States district courts can exercise the jurisdiction of an article III court. See Northern Pipeline Construction Co. v. Marathon Pipeline Co. (1982) 458 U.S. 5, 73 L. Ed. 2d 598; American Insurance Co. v. 356 Bales of Cotton (1828) 26 U.S. 510. (Of course, one could split hairs and contend that a court with a congressional grant of district court jurisdiction is still not a district court.)

Thus, the proper interpretation of that sentence, when viewed in the statutory scheme, is that the United States district court has exclusive jurisdiction in all cases in which such a court is available. Otherwise it doesn't make sense. Thus, at the present time all fifty states, our two commonwealths (Guam and the Virgin Islands) are within the jurisdiction of United States district courts and all preferred ship mortgages in those states, commonwealths and territories must be foreclosed in United States district courts to the exclusion of state, commonwealth or territorial courts.

That leaves American Samoa. American Samoa is not within the jurisdiction of a United States district court. Therefore, no such court can entertain "exclusive" jurisdiction of the foreclosure of ship mortgages in this territory.

Neither is the High Court of American Samoa a federal court, Vessel Pacific Princess v. Trial Division, High Court (1984) 2 A.S.R.2d 21, nor has it been granted district court jurisdiction by congress. See Northern Pipeline and 356 Bales of Cotton.

It is a territorial court of a territory of the United States. As such it gives full faith and credit to the laws of the United States. See U.S. Constitution, article IV, sections 1 and 2; 28 U.S.C. section 1738; Hazen Research, Inc. v. Omega Minerals, Inc. (5th Cir. 1974) 497 F.2d 151.

Thus, the principles I distill from all of the above:

1. If there exists in a political entity a United States district court having geographical jurisdiction (the fifty states plus all commonwealths, territories and possessions except American Samoa), United States preferred ship mortgages can be foreclosed only in the appropriate United States district court.

2. If there exists a political entity which has a court with admiralty jurisdiction and which gives full faith and credit to United States laws but which is not within the geographic jurisdiction of a United States district court (American Samoa) the admiralty court in that entity (the High Court of American Samoa) has jurisdiction to foreclose preferred ship mortgages.

3. In all other political entities (foreign nations, their territories and possessions) the foreclosure of preferred ship mortgages is a matter of treaty or comity. (Such foreclosures would probably by chancy in Havana, Shanghai or Vladivostok.)

Thus, I conclude, belatedly, that the High Court of American Samoa has jurisdiction to enforce a ship mortgage.

The holding of the court in Interocean Ships, Inc. (1984) 2 A.S.R.2d 21 is not to the contrary. There, on the basis that this court was not a United States district court, the court granted a motion to dismiss a limitation of liability proceeding under U.S.C. section 184. Proceedings under that section were far beyond the jurisdiction of this court since they

involve the injunction of proceedings in United States district courts or state courts and the marshalling of claims of creditors.

Parenthetically, I would observe that my original ruling would have a devastating impact on the tuna fishing industry and the economy of American Samoa which depends on that industry for a major part of its economy. Lenders simply wouldn't lend money on a purse seiner knowing it might go to American Samoa and avoid foreclosure. While not purporting to be an expert in the field of tuna boat financing, I have observed that most of these boats are in hock up to their eyeballs and if this source of financing were cut off, there soon wouldn't be any such boats plying the waters of the South Pacific and selling their wares to the canneries of American Samoa. I don't think that was quite the intent of the ship mortgage law.

The order of December 5, 1984, denying plaintiff's motion for partial summary judgment is vacated. The court holds that plaintiff has a preferred ship mortgage on the motor vessel Conquest under 46 U.S.C. sections 921 et seq. and that it may be foreclosed under 46 U.S.C. section 951 in this court in the sum of $1,600,000 plus interest, attorney fees and costs.